**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 25-458-2** |
| LE CHU VALDIVIA | : | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

Defendant Le Chu Valdivia, together with his co-conspirators, defrauded a wide array of banks and other lenders, as well as the Small Business Administration ("SBA"), by fraudulently obtaining numerous loans, including SBA 7(a) loans prior to the COVID-19 pandemic and Economic Injury Disaster Loans ("EIDLs") and Paycheck Protection Program ("PPP") loans during the pandemic, taking advantage of an emergency relief effort for their own benefit. They obtained these loans with false loan applications and fake documents that supported these false applications. Collectively, the actions of defendant Valdivia and his co-conspirators caused losses of more than $7 million to the banks and the SBA, and Valdivia himself was responsible for obtaining fraudulent loans totaling approximately $200,000.

For these reasons, as well as for the reasons provided below, the government recommends a sentence within the advisory guideline range of 8 to 14 months' imprisonment, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

I.      **BACKGROUND**

On January 16, 2026, the defendant pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The defendant admitted that he filed a fraudulent SBA 7(a) loan application and that this loan application was submitted by interstate wire.

7(a) loans were available prior to, during, and after the pandemic. These loans, which were funded by lenders and partially guaranteed by the SBA, were intended to assist small businesses that might not be able to obtain financing at a reasonable rate. The SBA used the following information in the applications for these loans to determine whether the applicant qualified for the loan: the number of company employees, the company's annual revenue for the prior three years, the company's need for the loan, and a commitment to use the funds for a business purpose. The conspiracy charged in this case was headed by a Florida accountant who prepared documents supporting fraudulent SBA loans for customers throughout the United States, including California-based co-conspirator Frank Hamilton, a charged party who recruited other borrowers. (Many of these borrowers knew one another through church, stock trading classes, or both.) There was no business purpose for these loans. Rather, Valdivia's and his co-conspirators' intent was to use the funds to invest in the stock market and for their personal use.

Significantly, most of the conspirators did not have a functioning business. As a result, Hamilton and co-conspirator Michael Jones assisted them in obtaining a "shelf company," that is, a company that had been created by a vendor who registered a non-functioning business in a state with minimal corporate regulations, paid all required fees for several years, and then sold the company "off the shelf" so that it could be used by individuals who needed to make it appear that they had a company that had been in business for a significant length of time. A few of the borrowers did have existing businesses.

Defendant Valdivia, with the assistance of co-conspirator Michael Jones, acquired a shelf company named Citizo. This company had no business functions, no revenue, and no employees. Valdivia and others paid a fee to Hamilton and Jones to have websites, telephone numbers, and emails created for their shelf companies to make them appear to be legitimate active businesses.

The Florida accountant prepared most of the false documents used to back up the loan applications. These false supporting documents often included the names of co-conspirators and/or the names of the non-functioning companies owned by co-conspirators. These company and individual names were used as employees, contractors, and vendors on the fraudulent applications and supporting documents. Statements on the applications concerning the revenue and expenses of Valdivia's company and the purposes for which loan proceeds would be used were also false.

For 7(a) loans, the plan was for scheme participants to keep a small percentage of loan proceeds themselves and give the majority of the money to Hamilton to invest in the stock market on their behalf. Hamilton then sent the borrower enough money each month to make the loan payment, plus a small additional percentage.

On or about February 16, 2018, Valdivia received a $200,000 SBA 7(a) loan. The application included the following stated purposes: $157,343.50 would be used for working capital, and $29,250.00 would be used to purchase furniture, fixtures, or equipment. Importantly, the true purpose was to use the loan proceeds to invest in the stock market and for Valdivia's personal use.

In addition to obtaining his own loan, Valdivia also advised several of his co-conspirators to participate in the loan fraud scheme. For instance, he encouraged co-conspirators Timothy Park and Kenny Tran to participate in the loan fraud scheme. He also encouraged co-conspirator

Joseph Greco by telling him that when the conspirators made false statements to lenders, they were just telling the banks what the banks wanted to hear. All three of these co-conspirators filed multiple successful false loan applications, and the names of their companies were used in back-up documents for Valdivia's co-defendant Leslie Murray.

Moreover, Valdivia's application, set forth below, was submitted by means of interstate wire communications to the lenders and/or the SBA:

| Company | Lender / SBA | Type | Application Date | Funded | Amount |
|---------|--------------|------|------------------|--------|--------|
| Citizo | Bank B | 7(a) | 2/16/2018 | Yes | $200,000 |

## II.    SENTENCING CALCULATION

### A.    Statutory Maximum Sentence

The maximum sentence is a term of imprisonment of 20 years, three years supervised release, a fine of $250,000, and a special assessment of $100. Restitution of $111,632.88 is joint and several with co-defendants Frank Hamilton, Criminal No. 22-199-1, and Michael Jones, Criminal No. 22-199-2.

### B.    Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| | |
|---|---|
| Base offense level, USSG § 2X1.1(a) and 2B1.1(a)(1) | 7 |
| Loss between $95,000-$150,000, USSG § 2B1.1(b)(1)(E) | +8 |
| Adjusted Offense Level (subtotal) | 15 |
| Acceptance of Responsibility, USSG § 3E1.1(a) | -2 |
| Zero point offender, USSG § 4C1.1 | -2 |
| Total offense level | 11 |

Guideline level 11, Criminal History Category I results in a sentencing range of 8 to 14 months'

imprisonment.

### III.   ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

- 6 -

### A.   Consideration of the 3553(a) Factors

#### 1.   The Nature and Circumstances of the Defendant's Crimes

The defendant engaged in a serious offense. He filed for and received approximately $200,000 in loan proceeds for which he was not qualified through the use of a non-functioning company. Although he gave Hamilton $142,500 of this money, Hamilton in total returned to Valdivia approximately $143,515 of the proceeds. Valdivia made loan payments of $79,120.81. Through his actions, a substantial amount of taxpayer money was lost. Perhaps even more importantly, by committing fraud in programs designed to help small businesses and keep people employed during an economic disaster, it may be more difficult for qualified businesses to obtain needed funds during future times of need. For this reason, as well as to deter others from engaging in the same type of loan fraud, a sentence within the guideline range is appropriate.

#### 2.   The History and Characteristics of the Defendant

The defendant is 46 years old. The defendant is a resident of California who was raised by his mother. He married Tracy Worsham in 2011 and dissolved the marriage in August 2022. They have one daughter who lives with her mother.

The defendant worked as a manager at a number of dining and grocery establishments from 1997 until 2003. Since 2024, he has been working at Elevance Health Inc. as a sales agent. Neither the defendant's history nor personal characteristics provide the basis for a variance from the sentencing guidelines.

#### 3.   The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and To Provide Just Punishment for the Offense

The offense in this case is serious, the conspirators applied for loans totaling approximately $9,441,513, of which approximately $7,088,010 was funded. The funds

- 7 -

fraudulently obtained were allocated to support small businesses during the pandemic. This offense limited the funds available to genuine business applications and contributed to the erosion of trust in the relief programs that were designed to help small businesses. A guideline sentence would reflect the seriousness of the offense and promote respect for the law.

### 4. The Need for Adequate Deterrence and Protect the Public from Further Crimes by the Defendant

The need for deterrence under Section 3553(a) is not limited to deterrence of the particular defendant. *See, e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). Here, general deterrence is particularly important. The defendant worked with others to commit a more than nine-million-dollar fraud. Other fraudsters enticed by greed should be sent a message that such conduct will be severely punished. In this case, there is no known need for specific deterrence.

For these reasons, a sentence within the guideline range would provide deterrence to others who consider engaging in loan fraud.

### 5. The Need To Avoid Disparities

While every case is unique, the government's recommended sentence will avoid unwarranted sentencing disparities. The guidelines themselves "are designed to restrain unwarranted disparities." *United States v. Sample*, 902 F.3d 1196, 1201 (10th Cir. 2018) (citing

*Gall v. United States*, 552 U.S. 38, 54 (2007)). That is what the government requests here. 18 U.S.C. § 3553(a)(4), (a)(6). The guidelines here appropriately account for the defendant's conduct and reflect potentially mitigating factors. They account for the defendant's lack of criminal history by assigning him a criminal history category of I and applying the Zero Point Offender reduction.

### 6.  Educational or Vocational Training and Medical or Correctional Treatment

From 2001 through 2003, defendant Valdivia attended Truckee Community College. He graduated from Biola University in May 2007 with a Bachelor of Science degree in Organizational Leadership. He received a Master of Business Administration in 2016 from Washington State University.

The defendant is not in need of educational or vocational training. The defendant's physical and mental health needs can be met regardless of whether he is in custody.

### 7.  The Kinds of Sentences Available

As stated previously, the defendant is subject to a prison sentence. He could receive supervised release. He is not eligible for probation. He could receive a fine. A special assessment of $100 is mandatory.

### 8.  Restitution

Restitution of $111,632.88 should be ordered in this case, joint and several with co-defendants Frank Hamilton, Criminal No. 22-199-1, and Michael Jones, Criminal No. 22-199-2.

\*                    \*                    \*

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the

lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.        Supervised Release

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. A term of supervised release will aid the defendant's reentry to society, and will advance the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), assure that the defendant receives treatment for his physical and mental health conditions, § 3553(a)(2)(D), § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as this additional condition: The defendant shall participate in mental health treatment if directed to do so by the Probation Office.

## IV.   CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Judy Smith*
JUDY SMITH
Assistant United States Attorney

MARGARET A. MOESER
Chief, Money Laundering, Narcotics
& Forfeiture Section

*/s/ Varun Trivedi*
VARUN TRIVEDI
Trial Attorney, Money Laundering, Narcotics
& Forfeiture Section

## **CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served by email on Edward

Borden Jr., Esq. at eborden@earpcohn.com.


_/s Judy Smith_____
JUDY SMITH
Assistant United States Attorney


DATED:  April 21, 2026.